UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MALIK HOLLOWAY,

Defendant.

20-cr-126 (SHS)
24-cv-8281 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Petitioner Malik Holloway has moved pursuant to 28 U.S.C. § 2255 to vacate his sentence based on the purported ineffective assistance of his counsel. (Def.'s Mot. at 2, Dkt. No. 501 ("Mot.").) Holloway, represented by counsel, alleges that his criminal defense lawyer, Kelley Sharkey, Esq., made certain misstatements and omissions when Holloway was deciding whether to accept a plea offer and at the subsequent sentencing proceeding. For the reasons that follow, Holloway's motion is denied.

## I. Facts

Holloway was charged in an indictment on February 13, 2020 with 1) conspiring to distribute more than one kilogram of heroin, more than 400 grams of fentanyl, and more than 280 grams of crack in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(a), and 846, and 2) possession of firearms in furtherance of the drug trafficking offense in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2. (Indictment at 2–4, Dkt. No. 2.) The Government alleged that Holloway was a member of the "194 Bloods" drug trafficking organization, which had a high volume of heroin, fentanyl, and crack cocaine sales and was responsible for several shootings. (Presentence Investigation Report ¶¶ 14–15, Dkt No. 402 ("PSR").)

At the time of the indictment Holloway was already in federal custody in connection with a separate indictment in the Southern District of New York charging him with being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2 (the "Felon-in-Possession Case"). Indictment, *United States v. Holloway*, No. 19-cr-897 (S.D.N.Y. Dec. 12, 2019), Dkt. No. 5. In the Felon-in-Possession Case, Holloway, represented by Kelley Sharkey, pled guilty to being a felon in possession of

ammunition pursuant to a plea agreement before Judge Andrew L. Carter, Jr. on December 7, 2022. Plea Hr'g Tr. 2:8–16, 5:11–13, 14:17–19, *Holloway*, No. 19-cr-897 (S.D.N.Y. Dec. 7, 2022), Dkt. No. 86. At that change-of-plea hearing, Judge Carter advised Holloway that the court was going to determine his sentence at a later date and that "there is no promise of what your guideline range will be, nor is there a promise of what your sentence will be." *Id.* at 9:18–22. Holloway replied that he understood. *Id.* at 9:23–24.

Four weeks after he pled guilty in the Felon-in-Possession Case, Holloway, again represented by Sharkey, accepted a plea offer in this case pursuant to which he would agree to plead guilty to the lesser-included offense of conspiring to distribute and possess with intent to distribute more than 100 grams of heroin, more than 40 grams of fentanyl, and more than 28 grams of crack in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (Plea Hr'g Tr. 8:16–24, 19:3–6, Dkt. No. 375 ("Plea Hr'g Tr.").)

In Holloway's telling, Sharkey made certain misrepresentations regarding the terms and collateral consequences of the plea offer and failed to provide him with an opportunity to review the offer. Holloway first claims that Sharkey "assured him that he would receive a sentence of six and one-half . . . years if he pled guilty." (Mot. at 2.) Next, Holloway alleges that while reviewing the collateral consequences of his conviction, he related to Sharkey that he was "extremely concerned" with the possible imposition of a SORNA special condition that he comply with the requirement to register as a federal sex offender (the "SORNA condition"). (*Id.* at 3.) Indeed, he had previously been designated a "sex offender" by the Bureau of Prisons in connection with a previous conviction in the Eastern District of New York. (*Id.* at 2–3.) But, according to Holloway, Sharkey dismissed this concern, explaining that the SORNA condition was not mandatory, and that she would litigate the issue if it were recommended by the Probation Department. (*Id.* at 3.) Holloway also contends that he was never provided with a written copy of the plea agreement, and that his only opportunity to review the plea agreement with Sharkey occurred the day before the hearing while he was separated from counsel by a glass partition. (*Id.* at 2.)

Holloway's testimony at the change-of-plea hearing paints a materially different picture. As an initial matter, Holloway confirmed, under oath, that before signing the plea agreement he read the agreement, discussed it with Sharkey, and understood its terms. (Plea Hr'g Tr. 15:5–13.) At that hearing, this Court explained to Holloway each of the rights he would be giving up should he decide to plead guilty, including the right to appeal or collaterally attack any sentence shorter than 162 months' imprisonment, and Holloway repeatedly confirmed that he understood each of these rights. (*Id.* at 5:11–7:23, 16:12–20.) And Holloway affirmed under oath that he "had a complete

opportunity to discuss [his] case with Ms. Sharkey and . . . the consequences of entering a plea of guilty," and that he was "satisfied with Ms. Sharkey and her representation of [him]." (*Id.* at 4:20–5:1.) In terms of his sentencing exposure under the plea agreement, Holloway testified to the following:

THE COURT: Now, do you understand that the maximum possible penalty of the crime that you told me you wish to plead guilty to is 40 years in prison, lifetime supervised release, a maximum fine of the greatest of $5 million, or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to individuals other than you as a result of the offense, plus a $100 special assessment?
Do you understand that?
THE DEFENDANT: Yes, sir.

. . .

THE COURT: Do you understand that if anyone has attempted to tell you what your sentence is going to be -- and that could be Ms. Sharkey, it could be [AUSA] Hobson, it could be anybody, it could be even if you yourself think you know what your sentence could be -- everybody could be wrong?
Do you understand that?
THE DEFENDANT: Yes, sir.

. . .

THE COURT: And if you are sentenced, ultimately, to something that you don't expect, or if you are sentenced to something that's different than what anybody told you they thought it was going to be, you still are going to be bound to this guilty plea, sir, and you won't be allowed to withdraw it.
Do you understand that?
THE DEFENDANT: Yes, sir.

(*Id.* at 9:23–10:6, 13:20–14:1, 14:13–19.)

At Holloway's sentencing on May 22, 2023, the Court found that the total offense level was 27, the criminal history category was VI—due to numerous previous felony convictions, including two violent sexual assaults—and the resulting sentencing guideline range was 130 to 162 months. (Sentencing Hr'g Tr. 6:3–5, 7:7–8, 18:17–18, Dkt. No. 417; PSR at 12-17, 33.) Holloway was subsequently sentenced to a significantly below-Guidelines sentence of 100-months' imprisonment. (J. at 2, Dkt. No. 411; PSR at 33.)

For his part, Holloway alleges that Sharkey's performance at, and immediately after, sentencing fell short. Holloway claims "he did not receive or meaningfully review the [presentence report] until immediately before the sentencing hearing." (Mot. at 5.) And, according to Holloway, despite previously relaying to Sharkey his concern

regarding the SORNA condition and his desire for Sharkey to litigate the potential imposition of that condition, Sharkey failed to object, either in writing or orally during the hearing. (*Id.* at 3; Def.'s Letter Mot. Special Condition, Dkt. No. 466.) Holloway further alleges that after receiving his sentence, he immediately instructed Sharkey to file a notice of appeal, which she failed to do. (Mot. at 3.)

Similar to his allegations regarding Sharkey's performance at the plea stage, Holloway's sentencing allegations are flatly belied by the record. At the sentencing hearing, Sharkey informed this Court that Holloway had had a "full opportunity" to read and discuss the government's sentencing submissions, including the presentence report that stated his previous sexual assault convictions "may require the defendant to register under federal SORNA laws." (Sentencing Hr'g Tr. 6:3–16; PSR at 12.) Holloway made no effort to contradict Sharkey's representation regarding his review of the PSR. When imposing the sentence, the Court advised Holloway that he "must comply with the requirements of [SORNA]." (Sentence Hr'g Tr. 19:13–14.) And at the end of the hearing, the Court explained to Holloway that he has the right to appeal, and should he make that request, "the Clerk of Court will prepare and file a notice of appeal on [his] behalf immediately." (*Id.* at 21:11–22.) Holloway confirmed he understood these rights, (*id.* at 21:23–24), and there is no evidence that he objected or attempted to appeal the SORNA condition.

Indeed, during a May 25, 2023 sentencing hearing for the Felon-in-Possession Case before Judge Carter—three days after the sentencing proceeding in this case where Sharkey allegedly failed to object to the SORNA condition—Holloway responded "[y]es" to Judge Carter's question of whether Holloway was "satisfied with [Sharkey's] legal representation up to this point." Sentencing Hr'g Tr. 22:16–18, *Holloway*, No. 19-cr-897 (S.D.N.Y. May 25, 2023), Dkt. No. 94. At that hearing, Holloway also posed a relatively sophisticated question concerning the calculation of time-served between his recent federal sentences and a previous sentence in the Eastern District of New York for a violation of supervised release, which prompted a colloquy between Judge Carter, Holloway, and counsel on the issue. *Id.* at 14:8–17:11. But at no point during that colloquy or the hearing did Holloway raise the SORNA condition or Sharkey's purported failure to object to that condition during the sentencing proceeding in this case. Judge Carter sentenced Holloway to 19 months' imprisonment to run concurrently to the sentence in this case. *Id.* at 21:16–17, 22:1–3.

After filing several *pro se* motions with the Court, Holloway, through present counsel, consolidated his claims into this motion in March of this year. (Mot. at 1.) The Court then ordered Sharkey to submit an affidavit addressing Holloway's allegations. (Order, Dkt. No. 506.) The Government subsequently made "substantial efforts" and

numerous attempts to contact Sharkey through email, telephone calls, and texts. (Government's Letter Mot., Dkt. No. 520). These efforts also involved contacting "numerous individuals," including Sharkey's husband. (Government's Letter, Dkt. No. 522.) The Government and defense counsel have both concluded that Sharkey is unable to submit an affidavit and "that the Court will have to decide Holloway's counseled § 2255 motion without the benefit of an affidavit from Ms. Sharkey." (*Id.*) Holloway did submit a declaration affirming the truthfulness of the factual representations in his motion. (Holloway Decl., Dkt. No. 528.)

## II. Legal Standard

A prisoner in federal custody may petition a court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Section 2255 provides relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Holloway contends that his sentence should be set aside on the basis that his counsel was constitutionally deficient in a way that deprived him of the right to effective assistance of counsel guaranteed by the Sixth Amendment to the U.S. Constitution. A claim of ineffective assistance of counsel is analyzed under the two-part *Strickland* test, which requires the petitioner "show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Lee v. United States*, 582 U.S. 357, 363 (2017) (quoting *Strickland v. Washinton*, 466 U.S. 668, 688, 692 (1984)). Under the first prong of *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential" based on the "counsel's perspective at the time" rather than the 20/20 vision of hindsight, and a court "must indulge a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance." 466 U.S. at 689.

28 U.S.C. § 2255(b) states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, [to] determine the issues and make findings of fact and conclusions of law with respect thereto." *See Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011); *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Nevertheless, a district court may properly evaluate a petition without conducting a full-blown evidentiary hearing by deciding disputed facts on the basis of written submissions. *See Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003); *see also Raysor*, 647 F.3d at 494. To that end, the U.S. Court of Appeals for the Second Circuit has approved of a district court's denial of a section 2255 petition without an evidentiary hearing where the plea

and sentencing transcripts contradict the petitioner's claims of ineffective assistance of counsel. *See Roa v. United States*, 101 F.3d 1394 (2d Cir. 1996) (summary order).

## III. Discussion

The Court finds that Holloway cannot satisfy the first prong of *Strickland*: he has not shown that his counsel's representation was objectively unreasonable. Holloway's petition is therefore denied.

Under the first prong of *Strickland*, Holloway must prove that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687–88. Holloway alleges that Sharkey's performance was defective because she (1) failed to provide him with a meaningful opportunity to review the plea agreement and the presentencing report; (2) erroneously promised that he would not receive a sentence in excess of six and a half years; and (3) falsely assured him that his conviction would not give rise to a mandatory SORNA special condition and then failed to object to and litigate that condition at sentencing.

In support of this argument, Holloway makes factual accusations in his motion and provides a supporting declaration. But courts frequently do not credit such bare accusations when they are, as they are here, directly belied by the defendant's sworn testimony at a prior hearing. *See, e.g.*, *Rosenberger v. United States*, 133 F. App'x 799, 801 (2d Cir. 2005) (summary order) (rejecting defendant's "self-serving, conclusory allegations" as inconsistent with his previous testimony at a plea allocution); *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam) (district court entitled to rely on defendant's sworn statements at plea allocution when faced with conclusory allegations asserted at a later date); *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (testimony at a plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony . . . .").

That is precisely the case here. As discussed above, Holloway's sworn statements during his plea and sentencing hearings confirm that he was provided with adequate time to review the plea agreement and presentence report and that Sharkey did not promise a sentence of six and a half years, nor did she guarantee that his conviction would not carry a mandatory SORNA condition. The Court does not credit Holloway's allegations and thus finds that Sharkey's conduct fell within "the wide range of professionally competent assistance" to which Holloway was entitled. *Strickland*, 466 U.S. at 690. Moreover, because Holloway has not sufficiently set forth a "plausible" claim for relief as to these arguments, his petition is denied without a hearing.

Holloway also alleges that Sharkey failed to file a notice of appeal despite his instructions to do so. (Mot. at 3.) This accusation, too, is contradicted by the record. At the sentencing hearing for this case, the Court advised Holloway of his right to appeal and that, should he wish to appeal, "the Clerk of Court will prepare and file a notice of appeal on [his] behalf immediately." (Sentence Hr'g Tr. 21:11–22.) Holloway confirmed he understood such rights but provides no evidence that he sought to pursue an appeal. (*Id.* at 21:23–24.) Moreover, at a sentencing hearing before Judge Carter just three days later, Holloway stated that he was happy with Sharkey's representation. And when presented with the opportunity to discuss any open questions with Judge Carter, Holloway did not mention Sharkey's purported false representations regarding his sentence exposure or the SORNA special condition. Accordingly, the Court does not credit Holloway's allegations and finds that Sharkey's conduct was not constitutionally deficient.

Citing *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006) and *Thomas v. United States*, 93 F. 4th 62 (2d Cir. 2024), Holloway asks for a testimonial hearing to further develop the factual record behind this claim. (Reply Mem. Supp. Def.'s Mot. at 3, Dkt. No. 527.) But the Second Circuit in *Campusano* and *Thomas* held simply that a defendant claiming his attorney failed to file a requested notice of appeal is entitled to a full opportunity to be heard, not that he is always entitled to a testimonial hearing on the motion. *See Rainford v. United States*, 648 F. Supp. 2d 476, 479 (E.D.N.Y. 2009) ("Although the Second Circuit has required that the Court provide a petitioner with the opportunity to be fully heard before rejecting a claim that trial counsel unreasonably failed to file a notice of appeal . . . there is no requirement for a testimonial hearing.").

Indeed, the court in *Campusano* explained that "the district court has discretion to determine if a testimonial hearing" is warranted. 442 F.3d at 776 (citing *Chang v. United States*, 250 F.3d 79, 85–86 (2d Cir. 2001)); *see also Thomas*, 93 F.4th at 66. The Court recognizes this case presents the unusual circumstance where trial counsel is simply unavailable to supplement the record with an affidavit. But Sharkey's inability to testify at a fact hearing undermines the value of any such hearing. *Cf. Chang*, 250 F.3d at 86 (affirming denial of § 2255 petition without a hearing when the potential testimony "would add little or nothing to the written submissions"). The Court therefore determines that a testimonial hearing is not required to evaluate Holloway's petition.

## IV. CONCLUSION

For the foregoing reasons, Holloway's motion is denied. Because Holloway has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2); *see also Lucidore v. N.Y. State Div. of*

*Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000). In addition, the Court certifies that any appeal from the order of this Court would not be in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445–46 (1962).

Dated: New York, New York
November 16, 2026

SO ORDERED:

Sidney H. Stein

Sidney H. Stein, U.S.D.J.